## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| EXPORT PACKERS COMPANY LIMITED,<br><br>         Plaintiff,<br>v.<br><br>UNITED STATES,<br><br>         Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>) Court No. 24-00061<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Export Packers Company Limited ("Export Packers" or "Plaintiff") by and through its attorneys, alleges and states the following claims against Defendant, the United States:

## JURISDICTIONAL STATEMENT

1. Export Packers seeks judicial review of the U.S. Department of Commerce's ("Commerce") Final Scope Ruling, *Antidumping Duty Order on Fresh Garlic from the People's Republic of China: Final Scope Ruling on Export Packers' Certain Individually Quick Frozen Cooked Garlic Cloves* (Case No. A-570-831) ("Final Scope Ruling"), issued on February 21, 2024.

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because this action is commenced under 19 U.S.C. § 1516a(a)(2)(B)(vi). This action contests Commerce's Final Scope Ruling under 19 U.S.C. § 1516a(a)(2)(B)(vi) regarding whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order.

## STANDING OF THE PLAINTIFF

3.  Export Packers is a Canadian food trading company and U.S. importer of the subject merchandise and is an interested party as defined by 19 U.S.C. § 1677(9)(A). Export Packers participated in the proceeding before Commerce that is the subject of this action, including by requesting the Final Scope Ruling, filing questionnaire responses, and rebuttal comments. Export Packers is being adversely affected by Commerce's Final Scope Ruling against it. Therefore, Export Packers has standing under 28 U.S.C. §2631(c), 1516a(a)(2)(A)(ii) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

4.  Commerce issued the Final Scope Ruling on February 21, 2024, and Commerce mailed the Final Scope Ruling to the interested parties via certified U.S. mail on February 22, 2024. This action was timely commenced by filing a summons on March 12, 2024, which was within 30 days of the date of mailing the Final Scope Ruling. Export Packers is also filing this Compliant within 30 days of filing the Summons. Therefore, this action was commenced within the time required pursuant to 19 U.S.C. §1516a(a)(2)(A)(ii), 28 U.S.C. § 2636(c), and Rule USCIT Rule 6(a)(1). This complaint is timely filed within 30 days of the filing of the summons pursuant to 1516a(a)(2)(A)(ii).

## STATEMENT OF FACTS

5.  On November 16, 1994, Commerce issued an antidumping order on fresh garlic from China. *See Antidumping Duty Order: Fresh Garlic from the People's Republic of China*, 59 FR 59209 (November 16, 1994) (the "Order").

6.  The Order covers "all grades of garlic, whole or separated into constituent cloves, whether or not peeled, fresh, chilled, frozen, provisionally preserved, or packed in water or other neutral substance."

2

7. The Order excludes garlic "prepared or preserved by the addition of other ingredients or heat processing."

8. On March 31, 2023, Export Packers requested a scope ruling on certain individually quick frozen ("IQF") cooked garlic cloves ("Scope Request") produced in and imported from the People's Republic of China.

9. The Scope Request explained that the inquiry garlic cloves are "prepared" by "heat processing" in a continuous boiling machine for 90 seconds, wherein the water is kept at a temperature of 98°C to 100°C. This process irreversibly changes the molecular structure, chemical content and texture of the garlic cloves, with corresponding changes in the aroma, taste and use of the goods.

10. Export Packers submitted as evidence the Expert Report of Eric Block, PhD (the "Block Report"), which contained extracts from a publication by Bin Zhang in the Journal of Food Science (the "Zhang Study"). The Block Report explained that the inquiry garlic cloves are "cooked" in that they are irreversibly altered at both the molecular and structural level. The report further explained that this processing significantly and irreversibly reduces the allicin content of the garlic cloves, which is the active flavoring ingredient that provides fresh garlic with its distinctive, pungent taste and aroma.

11. Export Packers also submitted a report conducted by Eurofins S-F Analytical Laboratories (the "Eurofins S-F Report") finding that that the process of cooking garlic cloves in boiling water for 90 seconds reduced their allicin content by approximately 98.5%.

12. On May 1, 2023, Commerce formally initiated a scope inquiry to determine whether Export Packers' IQF cooked garlic was within the scope of the Order. Petitioners submitted comments

on the scope application on June 7, 2023, and Export Packers submitted rebuttal comments on June 20, 2023.

13.     On August 24, 2024, Commerce issued a Supplemental Questionnaire, to which Export Packers responded on September 12, 2023. Petitioners commented on the questionnaire response on October 3, 2023, and Export Packers submitted a rebuttal on October 10, 2023.

14.     On February 21, 2024, Commerce issued its Final Scope Ruling, finding that Export Packers' imports of IQF cooked garlic are covered by the scope of the Order.

15.     The Final Scope Ruling first determined that the plain language of the Order's scope was not dispositive, as it "does not specify what is meant by the term 'heat processing.'" Final Scope Ruling at 7.

16.     Commerce also analyzed the factors set forth in 19 CFR 351.225(k)(1), or the "(k)(1) factors,"[1] focusing on a prior scope ruling requested by Coppersmith Inc. and Amexim Inc. (the "Amexim Scope Ruling") involving garlic treated by a process that Amexim described as "blanching," as well as a prior scope ruling requested by Trinity Distribution Inc. (the "Trinity Scope Ruling"). The Trinity Scope Ruling also involved "blanched" garlic and relied on the Amexim Scope Ruling in its analysis.

17.     The Amexim Scope Ruling, however, lacked certain critical information about the process involved and the effect of the process on the garlic. As Commerce itself acknowledged,

---

[1] The (k)(1) factors are (A) The descriptions of the merchandise contained in the petition pertaining to the order at issue; (B) The descriptions of the merchandise contained in the initial investigation pertaining to the order at issue; (C) Previous or concurrent determinations of [Commerce], including prior scope rulings, memoranda, or clarifications pertaining to both the order at issue, as well as other orders with same or similar language as that of the order at issue; and (D) Determinations of the [International Trade Commission] pertaining to the order at issue, including reports issued pursuant to the Commission's initial investigation.

"Amexim did not explain its blanching process in detail, what happens to the garlic during the blanching process, and why it is considered heat processing." Final Scope Ruling at 7. Thus, Export Packers pointed out that the record of the present scope ruling differs substantially from the record of the prior scope rulings.

18.  As a result of its approach to the ruling, Commerce determined that the (k)(1) factors were not dispositive and proceeded to analyze the factors set forth in 19 CFR 351.225(k)(2): (A) the physical characteristics of the merchandise; (B) the expectations of the ultimate purchasers; (C) the ultimate use of the product; (D) the channels of trade in which the product is sold; and (E) the manner in which the product is advertised and displayed, or the "(k)(2) factors."

19.  Despite the admitted lack of detailed evidence for the preparation of the garlic by heat processing in the Amexim Scope Ruling, Commerce continued to rely on the ruling both in refusing to rely on the (k)(1) factors and in analyzing the (k)(2) factors, including the "physical characteristics" factor.

20.  Specifically, Commerce found that the Order's heat processing exclusion was meant to "'exclude further processed products,' like roasted garlic." Final Scope Ruling at 8 (citing Amexim Scope Ruling at 6 and Trinity Scope Ruling at 8). Commerce then differentiated between cooked and roasted garlic and claimed that "Export Packers' boiling of the garlic does not amount to the same level of preparation" as roasted garlic, citing only the Amexim Scope Ruling as support. *Id.* (citing Amexim Scope Ruling at 6).

21.  Commerce also noted the Block Report, Zhang Study and Eurofins S-F Report submitted by Export Packers, and even agreed with their findings that IQF cooked garlic has a "different aroma, taste, and mouthfeel" than fresh garlic. Final Scope Ruling at 8. However, Commerce's ruling ignored critical evidence in the reports regarding the physical characteristics of IQF

cooked garlic, specifically how it differs at the molecular and structural level and has a drastically different allicin content than fresh garlic, as well as the Block Report's conclusive findings that such product "cannot be considered fresh garlic." Block Report at 8. As a result, Commerce determined that the physical characteristics of Export Packers' IQF cooked garlic weighed in favor of finding the product to be within the scope of the Order.

22. Commerce also did not address the Block Report in analyzing the "expectations of the ultimate purchasers" factor. As Export Packers explained in its response to the supplemental questionnaire, consistent with the Block Report, the ultimate purchasers expect IQF cooked garlic to have a less pungent taste and aroma than fresh garlic, consistent with its reduced allicin content. Instead, Commerce, applying its standard based on similarity to roasted garlic rather than the text of the scope language, differentiated between cooked and roasted garlic and determined that only roasted garlic differed from subject merchandise with respect to this factor.

23. As for the "ultimate use" factor, Commerce dismissed Export Packers' evidence showing that IQF cooked garlic and fresh garlic are used in different recipes, on the basis that IQF cooked garlic is still used as a food and for food seasonings, which are covered by the plain language of the scope. Final Scope Ruling at 9.

24. Commerce also concluded that the "channels of trade" factor cast doubt on whether Export Packers' garlic was "prepared" by "heat processing." In so concluding, however, Commerce never explained why fresh garlic and garlic "prepared" by "heat processing" would be retailed through different channels of trade, when, as Export Packers explained in its supplemental questionnaire response, both are food products.

25. Finally, in analyzing the advertising factor, Commerce disregarded Export Packers' evidence demonstrating that garlic is advertised based on how it is prepared. Commerce again

distinguished between cooked and roasted garlic, concluding that retailers only distinguish between fresh and *roasted* garlic, not fresh and *cooked* garlic. Final Scope Ruling at 10.

26. Commerce ultimately concluded that the inquiry garlic was within the scope of the Order based on "the totality of the record evidence regarding the five factors set forth under 19 CFR 351.225(k)(2)." Final Scope Ruling at 10.

27. This appeal followed.

**COUNT 1**

28. Plaintiff hereby incorporates, by reference, paragraphs 1 through 27 above.

29. Commerce determined that the Order's plain language and the record evidence submitted by Export Packers were not dispositive in this case because the exclusion in question does not "specify what is meant by the term 'heat processing.'"

30. Commerce then determined that this exclusion only refers to "further processed products," like "roasted garlic," and that Export Packers' merchandise does not qualify because cooked garlic was not prepared through a roasting process.

31. In so concluding, Commerce disregarded the plain language of the "heat processing" exclusion, which does not distinguish between cooked and roasted garlic or otherwise limit the types of "heat processing" that qualify for the exclusion. To the contrary, the plain language of the Orders excludes all garlic "prepared" by "heat processing."

32. Commerce's interpretation of the plain language of the Order's scope was arbitrary and capricious, and otherwise not in accordance with law.

33. Similarly, Commerce's determination that the plain language of the Order and (k)(1) factors were not dispositive in the present scope inquiry, and its determination to proceed to an

analysis of (k)(2) factors as a result, was arbitrary and capricious, and otherwise not in accordance with law.

**COUNT 2**

34. Plaintiff hereby incorporates, by reference, paragraphs 1 through 27 above.

35. In analyzing the Amexim Scope Ruling in its (k)(1) analysis, Commerce acknowledged that the ruling lacked critical details about the blanching process involved. Nevertheless, Commerce still relied on the ruling in its analysis of (k)(2) factors, especially its determination that only roasted garlic constitutes "heat processing" for purposes of exclusion from the Order.

36. Based on the distinction between cooked and roasted garlic set forth in the Amexim Scope Ruling, Commerce disregarded Export Packers' evidence with respect to the expectations of the ultimate purchaser and advertising (k)(2) factors.

37. Commerce also disregarded critical evidence submitted by Export Packers regarding the physical characteristics of IQF cooked garlic and its intended use, and it failed to explain the importance of the channels of trade factor, given that both fresh and cooked garlic are food products.

38. In disregarding Export Packers' evidence and instead relying on the Amexim Scope Ruling and the (k)(2) factors, the Final Scope Determination was unsupported by substantial evidence and otherwise not in accordance with the law.

**PRAYER FOR RELIEF**

WHEREFORE, and as challenged herein, Plaintiff respectfully requests that this Court:

(1) Enter judgment in favor of Export Packers;

(2) Hold unlawful Commerce's Final Scope Ruling challenged in this complaint;

(3) Remand this proceeding to Commerce with instructions to revise its Final Scope Ruling in conformity with the Court's decision; and

4) Grant Export Packers such other relief as the Court may deem appropriate.

                                                  Respectfully submitted,

                                                  /s/Jeffrey S. Neeley
Jeffrey S. Neeley
Jamie Shookman
Stephen Brophy
Robert Stang
Husch Blackwell, LLP
1801 Pennsylvania, Ave. N.W.
Suite 1000
Washington, D.C. 20006
(202) 378 – 2357
Jeffrey.Neeley@huschblackwell.com

Dated: March 27, 2024