A-570-831
Remand
Slip Op. 25-45
**Public Document**
E&C/OVII:  CD

***Export Packers Company Limited v. United States*,
Court No. 24-00061, Slip Op. 25-00045 (CIT April 18, 2025)
Fresh Garlic from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (the Court) in *Export Packers Company Limited v. United States*, Court No. 24-00061, Slip Op. 25-45 (CIT April 18, 2025).[1]  This action arises out of Commerce's final scope ruling concerning individually quick frozen (IQF) cooked garlic cloves imported by Export Packers Company Limited's (Export Packers).[2]  Export Packers requested a scope ruling to determine whether its IQF cooked garlic cloves produced and imported from the People's Republic of China (China) are within the scope of the antidumping duty (AD) order on fresh garlic from China.[3]  Consistent with the Court's directive, and the Court's findings as set forth in the *Remand Order*, and under respectful protest,[4] Commerce determines that Export Packers' IQF cooked garlic cloves are outside the scope of the *Order*.[5]

---

[1] *See Export Packers Company Limited v. United States*, Slip Op. 25-00045 (CIT April 18, 2025) (*Remand Order*).
[2] *See* Memorandum, "Final Scope Ruling on Export Packers' Certain Individually Quick Frozen Cooked Garlic Cloves," dated February 21, 2024 (Final Scope Ruling).
[3] *See Antidumping Duty Order: Fresh Garlic from the People's Republic of China*, 59 FR 59209 (November 16, 1994) (*Order*).
[4] *See Viraj Group v. United States*, 343 F. 3d 1371 (Fed. Circ. 2003).
[5] *See Order*.

## II. BACKGROUND

### A. Commerce's Final Scope Ruling

On March 31, 2023, pursuant to 19 CFR 351.225(c), Export Packers filed a scope ruling request, alleging that the IQF cooked garlic cloves that it imports into the United States are not covered by the scope of the *Order*.[6] Export Packers alleged that the IQF cooked garlic cloves fall within the scope exclusion for garlic "prepared" by "heat processing."[7] Specifically, Export Packers argued that the immersion in boiling or near boiling water for 90 seconds constitutes "heat processing" within the meaning of the scope, which cooks the IQF cooked garlic cloves, thus rendering them "prepared" within the meaning of the scope.[8] Because Commerce did not reject Export Packers' scope ruling application or initiate a scope inquiry based on the application, the application was deemed accepted, and the scope inquiry was deemed initiated on May 1, 2023.[9]

On February 21, 2024, based on comments and record evidence, Commerce issued the Final Scope Ruling.[10] Therein, Commerce found that Export Packers' IQF cooked garlic cloves are covered by the scope of the *Order* based on its analysis pursuant to 19 CFR 351.225(k)(2).[11] Specifically, Commerce found that the evidence on the record did not support a finding that Export Packers' IQF cooked garlic cloves are excluded from the scope of the *Order* by virtue of being "prepared" by "heat processing."[12] In reaching its conclusion, Commerce first examined the scope of the *Order* in conjunction with the sources provided in 19 CFR 351.225(k)(1).[13] Commerce found that these sources were not dispositive because "the *Order* does not specify

---

[6] *See* Export Packers' Letter, "Request for Scope Ruling on Certain Individually Quick Frozen Cooked Garlic Cloves," dated March 31, 2023 (Export Packers' Scope Application); *see also Order*.
[7] *See* Export Packers' Scope Application at 7-14.
[8] *Id*.at 8-11.
[9] *See* Memorandum, "Deemed Initiation of Scope Inquiry," dated May 1, 2023; *see also* 19 CFR 351.335(d)(1)(iii).
[10] *See* Final Scope Ruling.
[11] *Id*. at 7-10.
[12] *Id*.
[13] *Id*. at 7.

what is meant by the term 'heat processing,'" and two prior scope rulings, the Trinity and Amexim scope rulings, "did not describe garlic being immersed in boiling water such that the garlic was prepared by heat processing."[14]  Accordingly, because there existed ambiguity, Commerce proceeded to conduct the analysis described in 19 CFR 351.225(k)(2).[15]  In analyzing the five factors, Commerce found that record evidence supported concluding that Export Packers' IQF cooked garlic cloves are within the scope of the *Order*.[16]

Export Packers appealed Commerce's decision, arguing that:  (1) Commerce's finding that the considerations articulated in 19 CFR 351.225(k)(1) were not dispositive was supported by substantial evidence and not in accordance with law, and (2) Commerce improperly disregarded evidence on the record in its analysis of the factors listed in 19 CFR 251.225(k)(2).

### B. *Remand Order*

On April 18, 2025, the Court issued its *Remand Order*.  The Court remanded Commerce's final scope ruling for a determination consistent with its opinion.[17]  The Court held that, based on its reading of the plain language of the scope of the *Order,* Export Packers' IQF cooked garlic cloves are "clearly prepared by heat processing and physically transformed by that process."[18]  In making this holding, the Court found that the relevant scope language, *i.e.*, "prepared" by "heat processing," is not ambiguous "when viewed in the context of the process at issue."[19]

---

[14] *Id.*
[15] *Id*. at 8-10.
[16] *Id.*
[17] *See Remand Order* at 14-15.
[18] *Id.* at 14.
[19] *Id.* at 8-9.

The Court further held that Commerce's reliance on the Trinity and Amexim scope rulings in its analysis of the inquiry merchandise's physical characteristics under 19 CFR 351.225(k)(2) was "plainly unreasonable."[20] According to the Court, Commerce's reliance on the two prior scope rulings was "misplaced," where the two prior scope rulings examined "blanched" garlic, whereas Export Packers' IQF cooked garlic cloves are "cooked."[21] Finding that "Export Packers' garlic is cooked, and it is labeled as such," the Court concluded that Commerce improperly relied on the two prior scope rulings, and "fail{ed} to establish cooking is not heat processing."[22]

Finally, the Court held that Commerce's remaining analysis of the factors listed in 19 CFR 351.225(k)(2) was not supported by substantial evidence, including Commerce's reference to roasted garlic as an example of garlic "prepared" by "heat processing."[23] "If the scope language was intended to exclude roasted garlic only," the Court found, "it would have said so."[24] The Court further held that irrespective of Commerce's analysis of the 19 CFR 351.225(k)(2) factors, Commerce improperly conducted this analysis.[25] No such analysis was necessary, the Court held, because Commerce's Final Scope Ruling was "clearly in conflict with the applicable scope language."[26]

## III. ANALYSIS

Given the Court's findings in the *Remand Order*, Commerce revised its Final Scope Ruling to find that Export Packers' IQF cooked garlic cloves are excluded from the scope of the *Order* on the basis that they are "prepared" by "heat processing."[27]

---

[20] *Id.* at 9-13.
[21] *Id.* at 11-12.
[22] *Id.* at 13.
[23] *Id.*
[24] *Id.* at 13-14.
[25] *Id.* at 14.
[26] *Id.*
[27] The court stated that "{t}he garlic at issue is clearly prepared by heat processing and physically transformed by that process." *See Remand Order* at 14.

4

When conducting a scope inquiry, Commerce first examines the language of the scope of the order(s) at issue and the description of the product covered by the scope ruling request in conjunction with the sources provided in 19 CFR 351.225(k)(1).[28] The plain language of the *Order* excludes garlic "prepared or preserved by the addition of other ingredients or heat processing."[29] Export Packers' IQF cooked garlic cloves go through a continuous boiling machine for 90 seconds wherein the water is kept at a boiling or near-boiling temperature, after which the water is drained and the garlic undergoes a quick-freezing process.[30] In the *Remand Order*, the Court held that Commerce's finding that Export Packers' IQF cooked garlic cloves are within the scope of the *Order* was not supported by substantial evidence, and was "clearly in conflict with the applicable scope language."[31] Specifically, the Court held that Commerce's reliance on the Trinity and Amexim scope rulings, "which involved blanched, not cooked garlic," to find that Export Packers' IQF cooked garlic cloves are within the scope of the *Order* was "not supported by substantial evidence."[32] According to the Court, these prior scope rulings, which both analyze "blanching processes," are inapposite here.[33] Looking instead to expert reports submitted on the record by Export Packers (that Commerce did not analyze in its Final Scope Ruling), the Court found that Export Packers' IQF cooked garlic cloves have "certain different characteristics due to a heating element," suggesting "heat processing."[34] With this record evidence in mind, the Court held that Commerce "fail{ed} to establish cooking is not heat

---

[28] *See TMB 440AE, Inc. v. United States,* 399 F. Supp. 3d 1314, 1320 (CIT 2019) ("Whether the order is ambiguous or not, Commerce's regulations are unambiguous--it 'will take into account' the (k)(1) criteria in conducting a scope determination. 19 CFR 351.225(k). *No case has invalidated this regulatory requirement.*" (emphasis added)).
[29] *See Order*.
[30] *See* Export Packers' Scope Application at 3; *see also* Final Scope Ruling at 2.
[31] *See Remand Order* at 14.
[32] *Id.*
[33] *Id.* at 11-12 ("It does not follow that because Commerce previously determined *blanched* garlic is not heat processed, that therefore Export Packers' *cooked* garlic is also not heat processed. Nonetheless, using either the limited process at issue in Trinity or the unexplained process at issue in Amexim as the new touchstone is improper. The touchstone remains the words of the order." (emphasis in original)).
[34] *Id.* at 12-13. The Court further concluded that "{n}othing in the record rebut{ted} the experts' findings that cooked garlic is substantially different in flavor, aroma, and texture from raw garlic." *Id.* at n. 10.

5

processing."[35] Accordingly, the Court concluded that "the garlic at issue is clearly prepared by heat processing and physically transformed by that process."[36]

Though Commerce respectfully disagrees with the Court's holdings in this *Remand Order*, these final results of redetermination are made in accordance with the Court's opinion and directive. Accordingly, we determine that Export Packers' IQF cooked garlic cloves are excluded from the scope of the *Order*.[37] In making this finding, we follow the Court's logic, under protest, to its natural conclusion—where the Court found that Export Packers' IQF cooked garlic cloves are "heat processed" per the plain language of the scope, we must find that the inquiry merchandise is therefore excluded from the scope of the *Order*.[38] Further, in compliance with the Court's finding that the Trinity and Amexim scope rulings "at most, support the conclusion that roasting garlic could be one example of heat processing," we continue to find that the record contains no additional primary interpretive sources that are otherwise dispositive.[39] Accordingly, consistent with examining the sources provided in 19 CFR 351.225(k)(1), we determine that Export Packers' IQF cooked garlic cloves are outside the scope of the *Order*.

---

[35] *Id.* at 13.
[36] *Id.* at 14.
[37] *Id.*
[38] *Id.* at 9.
[39] *See* Final Scope Ruling at 13; *see also TMB 440AE, Inc. v. United States,* 399 F. Supp. 3d 1314, 1320 (CIT 2019) ("Whether the order is ambiguous or not, Commerce's regulations are unambiguous—it 'will take into account' the (k)(1) criteria in conducting a scope determination. 19 CFR 351.225(k). *No case has invalidated this regulatory requirement.*" (emphasis added)).

IV.   **COMMENTS ON THE DRAFT RESULTS**

Commerce released the Draft Results on May 1, 2025.[40]  The Fresh Garlic Producers Association and its individual members (the petitioners) and Export Packers timely submitted comments on May 9, 2025.[41]  No other party commented on the Draft Results.

Neither the petitioners nor Export Packers provided the requested public, executive summary of their comments regarding the Draft Results.[42]  The petitioners' arguments may be found on pages 1-7 of the Petitioner's Comments.  Export Packers' arguments may be found on pages 1-2 of Export Packers' Comments.

**Commerce's Position:**  Though Export Packers' comments express support for the Draft Results, Export Packers also requests that Commerce withdraw our "respectful protest" of the Court's *Remand Order*.[43]  For the reasons articulated in the Draft Results and below in response to the petitioners' comments, we decline to do so.  Accordingly, we have made no changes to the Draft Results.

The petitioners first argue that two primary interpretive sources within the meaning of 19 CFR 351.225(k)(1) demonstrate that Export Packers' IQF cooked garlic cloves are covered by the scope of the *Order*.  First, the petitioners argue that Export Packers' IQF cooked garlic cloves are the same product imported by Trinity Distribution Inc. (Trinity), which was subject to a scope ruling that determined Trinity's IQF garlic cloves are covered by the scope of the *Order*.[44]  The petitioners are correct that we determined that Trinity's garlic is not prepared or preserved

---

[40] *See* Draft Results of Redetermination Pursuant to Court Remand, *Export Packers Company Limited v. United States,* Court No. 24-00061, Slip Op. 25-00045 (CIT April 18, 2025), dated May 1, 2025 (Draft Results).
[41] *See* Petitioners' Letter, "Petitioners' Comments on Draft Results of Redetermination Pursuant to Court Remand," dated May 9, 2025 (Petitioner's Comments); *see also* Export Packers' Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand, Export Packers Company Limited v. United States, Court No. 24 00061, Slip Op. 25-00045 (CIT April 18, 2025)," dated May 9, 2025 (Export Packers' Comments).
[42] *See* Draft Results at 7.
[43] *See* Export Packers' Comments at 2.
[44] *See* Petitioner's Comments at 2 (citing Memorandum, "Scope Ruling – Trinity IQF Garlic Cloves," dated July 21, 2021 (Trinity Scope Ruling)).

by heat processing since "blanching does not constitute heat processing."[45] However, the Court found that "the blanching processes involved in Trinity and Amexim are different from Export Packers' cooking process."[46] Though we would otherwise agree with the petitioners' application of the Trinity scope ruling to the inquiry merchandise, we are bound by our obligation to conduct a remand redetermination that is consistent with the Court's opinion and directive. The Court held that Commerce's reliance on the Trinity scope ruling was "not supported by substantial evidence," and, accordingly, we have not reconsidered the scope ruling as a viable primary interpretive source within the meaning of 19 CFR 351.225(k)(1).[47]

The petitioners further cite to the *Preliminary Determination* of the underlying less than fair value investigation as an additional primary interpretive source that supports finding Export Packers' garlic in scope.[48] According to the petitioners, the *Preliminary Determination* illustrates a distinction between "further processed products" and "provisionally preserved" products.[49] In the *Preliminary Determination*, Commerce added language to exclude garlic "prepared or preserved by heat processing or other ingredients" but made it clear that the *Order* covers garlic that has only been "provisionally preserved."[50] The petitioners assert that because Export Packers' garlic cloves are an intermediate product that will be used to produce "further processed products," *i.e.*, "are merely provisionally preserved by freezing," they are covered by the scope of the *Order*.[51]

The petitioners cite to Export Packers' scope ruling request to support this assertion, alleging that Export Packers' explanation that its garlic is used in a variety of fresh and frozen

---

[45] *Id*. at 3 (citing Trinity Scope Ruling at 8).
[46] *See Remand Order* at 12.
[47] *Id.*
[48] *See* Petitioners' Comments at 3-5 (citing *Notice of Preliminary Determination of Sales at Less Than Fair Value: Fresh Garlic from the People's Republic of China*, 59 FR 35310 (July 11, 1994) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum).
[49] *Id.* at 4 (citing *Preliminary Determination*).
[50] *Id.* (citing *Preliminary Determination*).
[51] *Id.*

foods and food preparations illustrates that its garlic is not "further processed."[52] However, the Court held that "{t}he garlic at issue is clearly prepared by heat processing and physically transformed by that process."[53] The Court further dismissed any analysis of ultimate use, finding that usage as an ingredient or seasoning is "such a broad concept, that {it is} not useful in this scope analysis."[54] Accordingly, consistent with the Court's findings in the *Remand Order*, we find these arguments unavailing.

The petitioners further allege that several secondary interpretative sources as provided in 19 CFR 351.225(k)(1)(ii) demonstrate that Export Packers' IQF cooked garlic cloves are covered by the scope.[55] Specifically, the petitioners note that Commerce has previously relied on relevant Customs rulings and the language of certain HTSUS provisions in interpreting the *Order's* scope, including where such sources informed Commerce's determination that the key distinction is whether the merchandise is fit for human consumption in its imported state.[56] The petitioners further cite to prior caselaw that they purport illustrates that because Export Packers' garlic cloves have a "variety" of uses, they are not prepared or preserved.[57] As noted above, the Court held that comparing how Export Packers' garlic is used with how the subject merchandise would be used is "not useful in this scope analysis."[58] Further, and more pertinently, the Court found that "in embarking on a (k)(1) analysis, {Commerce should not} have substituted its prior rulings regarding blanched garlic for the words of the order. The garlic at issue is clearly prepared by heat processing and physically transformed by that process."[59] Pursuant to 19 CFR

---

[52] *Id.* at 5 (citing Export Packers' Scope Application at 4).
[53] *See Remand Order* at 14.
[54] *Id.*
[55] *See* Petitioners' Comments at 5-6 (citing Memorandum, "Scope Ruling in the Antidumping Duty Order on Fresh Garlic from the People's Republic of China," dated June 25, 2004 (Amexim Scope Ruling)).
[56] *Id.*
[57] *Id.* (citing *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1441 (Fed. Cir. 1998), *Nature's Touch Frozen Foods (West) Inc. v. United States*, Slip Op. 23-00082 (CIT May 26, 2023), and Export Packers' Scope Application at 4).
[58] *See* Remand Order at 14.
[59] *Id.*

9

351.225(k)(1)(ii), "in the event of a conflict between {} secondary interpretive sources and the primary interpretive sources under paragraph (k)(1)(i) {}, the primary interpretive sources will normally govern in determining whether a product is covered by the scope of the order at issue." Because the Court found Export Packers' garlic to be "heat processed" "per the plain language of the scope," the petitioners' reliance on (k)(1)(ii) factors is unavailing. Accordingly, we made no changes to our decision in the Draft Results, and consistent with the Court's *Remand Order*, continue to find Export Packer's IQF cooked garlic cloves are outside the scope of the *Order*.

## V.      FINAL RESULTS OF REDETERMINATION

Consistent with the Court's *Remand Order*, and under respectful protest, Commerce revised our Final Scope Ruling regarding Export Packers' IQF cooked garlic cloves. Consequently, on remand, we find that Export Packers' IQF cooked garlic cloves are not subject to the *Order*. Should the Court affirm these final results of redetermination, Commerce intends to issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with the discussion above.

12/9/2025

X _____

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia,
Deputy Assistant Secretary
  For Enforcement and Compliance