## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| EXPORT PACKERS COMPANY LIMITED, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) Before: The Honorable Jane A. Restani |
| Defendant, | ) Court No. 24-00061 |
| and | ) ) |
| FRESH GARLIC PRODUCERS ASSOCIATION AND ITS INDIVIDUAL MEMBERS, ET AL., | ) ) ) ) |
| Defendant-Intervenors. | ) ) |

### PLAINTIFF'S REBUTTAL COMMENTS IN SUPPORT OF REMAND REDETERMINATION

Nithya Nagarajan, Esq.
Robert Stang, Esq.
Stephen Brophy, Esq.
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue NW
Suite 1000
Washington, DC 20006
Tel. (202) 378-2409

*Counsel for Export Packers Company Limited*

Dated: January 16, 2026

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................................. **i**
**TABLE OF AUTHORITIES** ......................................................................................................... **ii**
**I.    INTRODUCTION** ................................................................................................................ 1
   **A.    The Plain Language of the Scope Excludes Export Packers' Cooked Garlic** ............. 1
   **B.    The Trinity Scope Ruling Does Not Support Defendant-Intervenor's Argument** ...... 3
   **C.    The Department's Preliminary Determination in the Investigations Does Not Support Defendant Intervenor's Argument** .................................................................. 5
   **D.    Secondary Sources Do Not Support Defendant-Intervenor's Argument** ................... 9
   **E.    Conclusion** .................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Nature's Touch Frozen Foods (W.) Inc. v. United States*,
   639 F. Supp. 3d 1287 (Ct. Int'l Trade 2023) ............................................................................ 10
*Orlando Food Corp. v. United States*,
   140 F.3d 1437 (Fed. Cir. 1998) ............................................................................................ 9, 10

**Federal Regulations**

*Notice of Preliminary Determination of Sales at Less Than Fair Value: Fresh Garlic from the People's Republic of China*,
   59 Fed. Reg. 35,310 (Dep't Commerce July 11, 1994) ............................................................. 5

I.  **INTRODUCTION**

On behalf of Plaintiff Export Packers Company Limited ("Export Packers"), we respectfully submit these comments in rebuttal to the comments filed on December 29, 2025 by Defendant-Intervenors the Fresh Garlic Producers Association and its individual members regarding the U.S. Department of Commerce's ('Commerce's) final results of redetermination upon remand filed on December 9, 2025, ECF No. 62 ("Remand Results"), pursuant to *Export Packers Company Limited v. United States*, Court No. 24-00061, Slip Op. 25-45 (CIT April 18, 2025), ECF 46.  The comments are timely filed in accordance with the Order of the U.S. Court of International Trade ("the Court") dated December 23, 2025.

In its Remand Results, Commerce determined that Export Packers' individually quick frozen ("IQF") cooked garlic cloves are outside the scope of the *Antidumping Duty Order* on Fresh Garlic from the People's Republic of China.  This determination is in accordance with the Court's Opinion and Order in Slip Op. 25-45 and should be affirmed.  Defendant-Intervenor's comments do not provide new information or argument but simply rehash - again and again – arguments that have been effectively refuted by Export Packers and carefully reviewed and dismissed by the Court.  Moreover, Defendant-Intervenors continue to ignore the evidence on the record, including three scientific studies, that refute their arguments.

A.  **The Plain Language of the Scope Excludes Export Packers' Cooked Garlic**

Contrary to Defendant-Intervenor's reading, the plain language of the scope explicitly excludes Export Packers' IQF cooked garlic because the garlic was "prepared or preserved by…heat processing".  The scope covers,

> all grades of garlic, whole or separated into constituent cloves, whether or not peeled, fresh, chilled, frozen, provisionally preserved**,** or packed in water or other neutral substance, **but not prepared or preserved by** the addition of other ingredients or **heat processing**.

1

*See* Final Scope Ruling from USDOC to DAS for Operations Pertaining to Interested Parties ("Final Scope Ruling") at 2 (**PR 30**). Defendant-Intervenors argument amounts to a claim that boiling garlic for 90 seconds only "provisionally preserves" the garlic and does not constitute "heat processing". That argument, however, is not supported by the record evidence. As the Court found, the record supports the fact that Export Packers' garlic is cooked in boiling water for 90 seconds to the degree that its internal chemical structure is altered:

> The scope language here does not contain specific exclusionary language such that the phrase "prepared" by "heat processing" should be read to only include processes such as roasting. Had the scope language been intended to exclude solely roasted garlic as "heat processed," it would have said that. In the absence of such language, the court sees no reason why "boiled" or "cooked" garlic would not be considered "heat processed" per the plain language of the scope. Prepared" by "heat processing" is not ambiguous just because there can be many kinds of heat processing. It is unclear to the court why Commerce concluded that Export Packers' garlic that is cooked in boiling water for 90 seconds to the degree that its internal chemical structure is altered is not heat processed.

Slip Op. 25-45 at 8-9. Export Packers submitted three scientific reports from sources with impeccable scientific credentials, all of which support the fact that Export Packers' IQF cooked garlic was prepared by heat processing, rather than being merely "provisionally preserved".

The Block Report explained that the inquiry garlic cloves are "cooked" in boiling water and are irreversibly altered at both the molecular and structural level. The report further explained that this processing significantly and irreversibly reduces the allicin content of the garlic cloves, which is the active flavoring ingredient that provides fresh garlic with its distinctive, pungent taste and aroma. Export Packers' Rebuttal Cmts at Attachment C (Block Report) at 5-9 (**PR 20**). Export Packers also submitted a report conducted by Eurofins S-F Analytical Laboratories (the "Eurofins S-F Report") that supported the findings of the Block Report. *Letter from Husch Blackwell LLP to Secretary of Commerce Pertaining to Export Packers' Scope Ruling* Request ("Scope Request") at Ex. E (**PR 14, CR 3**). The Block Report

and Eurofins S-F Report demonstrated that cooking garlic in boiling water for 90 seconds reduces its allicin content from approximately 3,100 micrograms to less than 100 micrograms, a reduction of approximately 98.5% and collapses the cell walls in each clove of garlic to significantly alter its texture. Block Report at Executive Summary; Eurofins SF Report at 2. Thus, Export Packers' IQF cooked garlic cannot reasonably be characterized as merely provisionally preserved given that the cooking process fundamentally transforms the garlic's chemical composition and structure at the molecular level: its taste, aroma, starch content and texture.

As the Court also held, "'Export Packers' garlic is cooked, and it is labeled as such" and "each report is consistent in concluding that cooking garlic irreversibly alters its molecular structure, chemical content, and texture." Slip Op. 25-45 at 13. Defendant-Intervenor's argument cites to no contradictory evidence that cooking garlic through such a method constitutes provisional preservation, rather than heat processing.

### B. The Trinity Scope Ruling Does Not Support Defendant-Intervenor's Argument

Contrary to Defendant-Intervenor's arguments, the Trinity Scope Ruling does not involve the same product as Export Packers' IQF cooked garlic. The garlic in the Trinity Scope Ruling was blanched, not cooked by boiling, which Commerce itself has conceded: "Trinity's IQF garlic cloves were blanched, not boiled". Final Scope Ruling at 7. As a result, Commerce also conceded that its prior scope rulings were "non-dispositive" for purposes of the (k)(1) analysis. *See* Final Scope Ruling at 7-8, fn. 49, 50, 54-55. Defendant-Intervenor's claim that the products are the same and that Trinity is dispositive requires it to ignore extensive record evidence to the contrary, which is the same error that the Court found in its opinion remanding this case to Commerce:

3

> Commerce chose to disregard this evidence and instead dogmatically relied upon its prior scope rulings involving inapposite processes to conclude that Export Packers' garlic is not heat processed.

Slip Op. 25-45 at 12.

> Export Packers' garlic is cooked in boiling water for 90 seconds so that its chemical makeup and texture is changed. Rather than dealing with this fact, Commerce again relied on its prior rulings in Trinity and Amexim, which involved blanched, not cooked garlic, to conclude Export Packers' cooked garlic is not heat processed.

Slip Op. 25-45 at 14.

The record of this case supports the fact that the blanching process in Trinity is not the same as the cooking process in this case. The Trinity blanching process involved steaming the garlic for 20-30 seconds at a temperature of over 95 degrees Celsius. Petitioners' 30-Day Comments, Attachment 4 at 3 n.17 (**PR 19**). By contrast, Export Packers' IQF cooked garlic cloves were cooked in boiling water for 90 seconds. Moreover, Export Packers submitted three scientific studies supporting the fact that its process was not mere blanching of the garlic. The Block Report explains that blanching garlic is a process that "merely cleans, brightens and enhances the preservation of the cloves without altering their flavor or aroma potential…." Export Packers' Rebuttal Cmts at Attachment C (Block Report, Executive Summary) (**PR 20**). As stated in the Block Report:

> Blanching is significantly different from cooking, which in the case of garlic cloves occurs upon heating in boiling water for longer periods of time, e.g. 90 seconds or longer.

Id. at 12. The Eurofins S-F Report determined that blanching garlic cloves by steaming them for 20 seconds reduced their allicin content by only 10.3%, whereas cooking garlic in boiling water for 90 seconds reduced the allicin content by approximately 98.5%. *See* Scope Request at 9, fn. 2 (discussing Eurofins S-F Report at 4 (Table 2)) and Ex. E, (**PR 14, CR 3**). The report prepared

4

by Eurofins also includes specific evidence and laboratory test results confirming that while the difference between raw garlic and blanched garlic prepared using the method described in *Trinity* "was negligible," "the comparison {of raw garlic and blanched garlic} with "cooked {garlic} is significant". *Id*. at 4. In that regard, the Eurofins report's analysis of Export Packers' garlic found that "raw and blanched garlic showed similar high levels of allicin from 610.1-680.5 mg/kg while cooked garlic showed very low results of 10.0 mg/kg." Id.  The Eurofins S-F Report also supported its conclusions concerning raw garlic, blanched garlic and cooked garlic with a Scanning Microscopy (SEM) Microstructure Analysis and found the following:

> SEM imagery showed differences in microstructure supporting evidence of heat treatment. The raw sample cells appeared the most rigid and intact, the blanched sample cells generally showed less rigid cell structure, and the cells in the cooked sample had a collapsed appearance.

*Id*. at 2. These unimpeached scientific studies conclusively establish that boiling a garlic clove for 90 seconds cooks the clove, resulting in not only a significant reduction of the allicin content but also to significant changes to the cellular wall structure of the garlic cloves, thereby dramatically changing the garlic clove's aroma, taste and texture.  Eurofins SF Analytical, Inc. Report at page 4; Block Report at Executive Summary; Zhang Study at 34.  This record evidence conclusively establishes that the blanched garlic at issue in the Trinity Scope Ruling is significantly different from Export Packers' cooked garlic.  Defendant-Intervenor does not even address this evidence and, at no point, has it submitted any evidence to the contrary.

C.     **The Department's Preliminary Determination in the Investigations Does Not Support Defendant Intervenor's Argument**

Defendant-Intervenor next points to Commerce's preliminary determination in the original investigation in which Commerce indicated that it had added additional language to the scope to exclude "further processed products".  *Notice of Preliminary Determination of Sales at Less Than Fair Value: Fresh Garlic from the People's Republic of China*, 59 Fed. Reg. 35,310,

5

35,311 (Dep't Commerce July 11, 1994). Defendant-Intervenor argues that the heat processing exclusion was only intended to cover further processed garlic and that Export Packers' IQF cooked garlic is merely an "intermediate product", rather than a "further processed product", because it can be used as an ingredient in various food preparations.

Essentially, Defendant-Intervenor argues that the term "further processed products" means only products that are fit for immediate consumption despite the fact that there is no indication in the preliminary determination that the term is so limited. Commerce did not offer any definition of "further processed products" in its preliminary determination. It certainly did not offer any definition that would limit the term to only products that are fit for immediate consumption. If Commerce had so intended, it would have offered such a definition of the term "further processed product". It would also have included such language in the scope itself rather than using the broader terms "prepared" and "preserved" by "heat processing".

In fact, Defendant-Intervenor's interpretation of the term is contradicted by its and Commerce's continued use of roasted garlic as an example of garlic that has been prepared by heat processing. With respect to roasted garlic, the record confirms that roasted garlic is also used as an ingredient in other food preparations. The evidence submitted by Export Packers in Exhibit B (27 Best Things to Do with Roasted Garlic) of its Responses to the Supplemental Questionnaire described roasted garlic as a "unique ingredient" that is used in "pasta, sauces, dips, and more." *Responses to Supplemental Questionnaire* (Sept. 12, 2023) ("Supp. Questionnaire Responses") (**PR 25**). Based on Defendant-Intervenor's definition of "further processed", neither boiled garlic nor roasted garlic would be excluded from the scope. In fact, Defendant Intervenor's proposed definition would render the entire exclusion meaningless as it is

6

hard to imagine any garlic that would meet their definition since garlic is generally used as an ingredient.

The only source that Defendant-Intervenor cites in support of its interpretation of the term "further processed" is the Amexim Scope Ruling. *See* Petitioners' 30-Day Comments at Attachment 10 (**PR 19**). As an initial matter, the facts asserted by Amexim in its scope ruling request are unsupported by any evidence and are contradicted by the evidence submitted by Export Packers in this case. The results of the Eurofins Report, Block Report and Zhang Study cannot be squared with the entirely unsupported claim in *Amexim* that boiling the garlic cloves for five minutes merely "blanched" the cloves and cleaned their surface.  As the Court noted, "[b]oiling for five minutes would create a completely cooked (or perhaps unusable) product." Slip Op. 25-45 at 11, fn 8.  Commerce itself recognized the significant flaws in Amexim's scope ruling request in making its determination:

> Finally, we have a long history of withholding the benefits of a proceeding when a party does not provide us with necessary information. Amexim has not provided adequate factual information to support its positions and claims, did not answer all the questions contained in the March 19, 2004, letter, provided incomplete responses, and is the only party that controls this information. Therefore, we find that Amexim has not demonstrated that its product is outside the scope of this order.

Amexim Scope Ruling at 7.  As the Court noted, "[a]s a result of Amexim's deficient response, Commerce found there was insufficient information to conclude Amexim's garlic was heat processed."  Slip Op. 25-45 at 11.  Respectfully, due to such flaws, the Amexim Scope Ruling should not serve as precedent.

Nevertheless, Defendant-Intervenor's arguments are not even supported by the Amexim Scope Ruling.  Defendant-Intervenor cites to Amexim to support its claim that the term "provisionally preserved" involves merchandise that remains unsuitable for immediate

consumption and are mainly used as raw materials for manufacturing purposes. Id. at 5. However, that is not what Commerce held in Amexim.  In the Amexim Scope Ruling, Commerce explained that Amexim's garlic cloves in brine were provisionally preserved because they were in a preservative solution and that the preservative solution made them unsuitable for immediate consumption.  Commerce cited to Customs classification rulings holding that "[h]eading 0711, HTSUS, covers vegetables provisionally preserved (for example, by sulfur dioxide gas, in brine, in sulfur water or in other preservative solutions), but unsuitable in that state for immediate consumption.". *Id*. Moreover, Amexim claimed that its garlic was merely "blanched". Commerce found that a blanched garlic would be "cleaner and perhaps does not grow as a result of the use of blanching, but the garlic is essentially the same product both before and following the blanching process."   Those facts are not applicable to Export Packers' cooked garlic.

Commerce never defined the term "provisionally preserved" as encompassing all garlic products that are "unsuitable for immediate consumption" or that are "mainly used as raw materials" in other food products nor did Commerce ever define the terms "prepared by heat processing" or "further processed products" as only applying to garlic that was suitable for immediate consumption or to garlic that could be considered a finished product, rather than an ingredient.   These are proposed restrictions created by Defendant-Intervenor out of whole cloth for the first time in this case.  They are not supported by the plain language of the scope or by the record evidence and should be rejected.

Furthermore, and contrary to Defendant-Intervenors' claim, the Court already considered the argument that the "heat processing" exclusion was only meant to apply to "further processed products" and that Export Packers' garlic did not qualify as a "further processed product", like

8

roasted garlic. Slip Op. 25-45 at 10-11.  The Court reasonably rejected these arguments citing to the scope language and record evidence, including the three scientific studies submitted by Export Packers.  *Id*. at 12.

D.     **Secondary Sources Do Not Support Defendant-Intervenor's Argument**

Finally. Defendant-Intervenor cites to the Amexim Scope Ruling for the proposition that language in the scope was taken from the Harmonized Tariff Schedule.  While it is true that Commerce recognized in that ruling that certain terms, specifically "fresh", "chilled", "frozen", "packed with water", and "provisionally preserved" were taken from the HTS, Commerce never claimed that the term "prepared…by…heat processing" was taken from the HTS and Commerce explicitly stated that none of the relevant HTS numbers refer to "heat processing":

> **It is clear that a great deal of the language in the scope originated with terms taken straight from the Harmonized Tariff Schedule.** The terms "fresh," "chilled," "frozen," and "packed in water or other neutral substance" all originate from the CBP's descriptions of HTSUS numbers 0703, 0710, and 2005. More importantly, the term "provisionally preserved" originated with the HTSUS number 0711. On the other hand, **none of these HTSUS numbers refer to preservation specifically "by the addition of . . . heat processing."**

Amexim at 4-5 (emphasis added). Nevertheless, Defendant-Intervenor cites to two court cases that dealt with the term "preparation" in the context of totally unrelated classification decisions. In *Orlando Food*, the Federal Circuit considered the classification of a product consisting of approximately sixty percent whole, peeled tomatoes and forty percent tomato puree by weight, as well as salt, citric acid, and basil leaf and whether it was properly classified under HTS 2002 covering "tomatoes prepared or preserved otherwise than by vinegar or acetic acid" or HTS 2103 covering "sauces and preparations therefor; mixed condiments and mixed seasonings; mustard flour and meal and prepared mustard". *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998).  In that context, the Federal Circuit stated that "[i]nherent in the term 'preparation' is the notion that the object involved is destined for a specific use', but that finding

9

relates to the Federal Circuit's finding that HTS 2103 may be understood as a use provision, which raised the question of whether the tomato product at issue was specifically used as a "sauce or preparation thereof". In short, *Orlando Foods* was a classification case applying the rules of classification.   None of the facts or findings in *Orlando Foods* is relevant to whether, in the context of an antidumping order, garlic is prepared by heat processing when it is boiled for 90 seconds.

Likewise, in *Nature's Touch*, the Federal Circuit Stated considered whether frozen fruit mixtures were properly classified under HTSUS 2106.90.98 as "[f]ood preparations not otherwise specified or included: Other: Other; Other; Other; Other; Other," or under HTS 0811 as "Fruit ... frozen[.]" *Nature's Touch Frozen Foods (W.) Inc. v. United States*, 639 F. Supp. 3d 1287 (Ct. Int'l Trade 2023), aff'd, No. 2023-2093, 2025 WL 1354992 (Fed. Cir. May 9, 2025). In that context, the Federal Circuit stated that "{a} food preparation must accordingly undergo additional processing beyond what is already inherently encompassed within the term 'food'" and noting that "{t}he structure of the HTSUS supports that frozen food is not prepared food in a tariff sense." 13 (Fed. Cir 2025 U.S. App. LEXIS 11224, *11,. May 9, 2025).   However, this was related to the fact that the Court was considering whether simply creating a mixture of different fruits constituted a preparation for purposes of HTS 2106.  Ultimately, the Court held that the common meaning of the term "fruit" includes mixed fruit and that the product at issue was properly classified under HTS 0811. 639 F. Supp. 3d 1287, 1297 (Ct. Int'l Trade 2023). Mixtures are not at issue in this case.  The courts also found that cleaning, sorting, and inspecting food products were insufficient to constitute "preparation." 2025 WL 1354992, at *5 (Fed. Cir. May 9, 2025).   However, neither court ever considered cooking as it was not relevant to the facts of the case and none of the facts or findings in *Orlando Foods* is relevant to the issue of whether, in

10

the context of an antidumping order, garlic is prepared by heat processing when it is boiled for 90 seconds.

Finally, these cases should not be read for the general proposition that the term "prepared" or "preparation" must always be interpreted to exclude any product that is "prepared for multiple appropriate uses and applications as foods," as Defendant-Intervenor claims. First, neither this Court nor the Federal Circuit ever said that in either *Orlando Foods* or *Nature's Touch*. Second, that interpretation would again contradict the position of both Commerce and Defendant-Intervenors that the exclusion for garlic prepared by heat processing was meant to exclude roasted garlic. As explained above, the record confirms that roasted garlic is also used as an ingredient in multiple other food preparations, including in "pasta, sauces, dips, and more." Supplemental Questionnaire Responses at Exhibit B (**PR 25**). Defendant-Intervenor does not even mention this exhibit, which is another example of Defendant-Intervenor ignoring record evidence just as they continue to ignore the three scientific studies that Export Packers placed on the record.

E.     Conclusion

For the above reasons, the Court should affirm Commerce's determination that Export Packers' IQF cooked garlic cloves are outside the scope of the *Antidumping Duty Order* on Fresh Garlic from the People's Republic of China.

Respectfully submitted,

/s/ Nithya Nagarajan
Nithya Nagarajan, Esq.
Robert Stang, Esq.
Stephen Brophy, Esq.

**Husch Blackwell LLP**
1801 Pennsylvania Ave., N.W.
Suite 1000
Washington, D.C. 20006
(202) 378-2409
nithya.nagarajan@huschblackwell.com

Dated: January 16, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this submission complies with the Court's word limitation requirement. The word count for the foregoing comments, as computed by Husch Blackwell's word processing system (Microsoft Word), is 3,432 words.

*/s/ Nithya Nagarajan*
Nithya Nagarajan

Dated: January 16, 2025