**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JANE A. RESTANI, JUDGE

_____
                                                    )
EXPORT PACKERS COMPANY LIMITED,     )
                                                    )
                    Plaintiff,                       )
                                                    )
            v.                                        )          Court No. 24-00061
                                                    )
UNITED STATES,                                 )
                                                    )
                    Defendant,                     )
                                                    )
            and                                      )
                                                    )
FRESH GARLIC PRODUCERS ASSOCIATION,  )
CHRISTOPHER RANCH L.L.C.,  THE GARLIC  )
COMPANY, and VALLEY GARLIC,            )
                                                    )
                    Defendant-Intervenors.     )
_____)

**DEFENDANT'S RESPONSE TO**
**COMMENTS ON THE REMAND REDETERMINATION**

Defendant, the United States, respectfully responds to the comments filed by defendant-

intervenors, Fresh Garlic Producers Association, Christopher Ranch L.L.C., The Garlic

Company, and Valley Garlic, ECF No. 67, concerning the United States Department of

Commerce's final remand redetermination filed in accordance with this Court's decision and

remand order in *Export Packers Company Limited v. United States*, 780 F. Supp. 3d 1342 (Ct.

Int'l Trade 2025) .  *See* Final Results of Redetermination Pursuant to Court Remand, ECF No.

62, December 9, 2025.  On December 29, 2025, and on January 16, 2026, Export Packers filed

statements in support of Commerce's final determination on remand.  ECF Nos. 66, 69.  We

respectfully request that the Court sustain the remand results because they comply with the

Court's opinion and order, and because they are supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

The administrative determination under review is the final scope ruling concerning individually quick frozen (IQF) cooked garlic cloves imported by Export Packers. *See Antidumping Duty Order on Fresh Garlic from the People's Republic of China: Final Scope Ruling on Export Packers' Certain Individually Quick Frozen Cooked Garlic Cloves* (Dep't of Commerce Feb. 21, 2024), P.R. 30[1]. Export Packers's garlic cloves are cleaned, peeled, and separated into cloves, put under continuous boiling or near-boiling water for 90 seconds, and then quick frozen and packaged for distribution. *Final Scope Ruling* at 2; Export Packers's Scope Application, P.R. 14; C.R. 3; *Export Packers*, 780 F. Supp. 3d at 1344-45.

I.      **Commerce Had Determined that Export Packers's Garlic Was Covered by the Order In Its Final Scope Ruling**

This case concerns Commerce's Final Scope Ruling, which Commerce issued after Export Packers requested that Commerce find that certain of its IQF cooked garlic that it imports into the United States is not covered by the antidumping duty order covering fresh garlic from China. *See* Export Packers' Scope Application; Remand Results at 2.

Relevant here, the scope of the Order covers "all grades of garlic, whole or separated into constituent cloves, whether or not peeled, fresh, chilled, frozen, provisionally preserved by the addition of other ingredients or heat processing." 59 Fed. Reg. 59,209-10 (Dep't of Commerce Nov. 16, 1994).

---

[1] "P.R." and "C.R." refer to public and confidential documents, respectively, in the investigation record. "P.1R.R." and "C.1R.R." refer to documents in the public first remand record and confidential first remand record, respectively.

In its request for a scope ruling, Export Packers argued that its IQF cooked garlic cloves fall within the Order's scope exclusion for garlic that is "prepared" by "heat processing." Scope Application at 7-14. Specifically, Export Packers claimed that its practice of immersing garlic cloves in boiling or near boiling water for 90 seconds constitutes "heat processing" within the meaning of the Order, arguing that this process cooks the IQF cooked garlic cloves and renders it "prepared" by heat processing. *Id.* at 8-11.

Commerce conducted a scope inquiry and on February 21, 2024, based on comments and record evidence, Commerce issued the Final Scope Ruling. *See* Final Scope Ruling. Commerce determined that Export Packers's IQF cooked garlic cloves are covered by the scope of the Order. *Id.* at 7-10. Specifically, Commerce found that the evidence on the record did not support a finding that Export Packers's IQF cooked garlic cloves satisfied the requirements of the Order's exclusion from the scope simply by virtue of being "prepared" by "heat processing." *Id.* at 7-10. In reaching this conclusion, Commerce first consulted the sources outlined in 19 C.F.R. § 351.225(k)(1) (the (k)(1) factors). *Id.* at 7. Commerce concluded that these sources did not conclusively answer whether Export Packers's garlic was excluded from the scope because "the *Order* does not specify what is meant by the term 'heat processing,'" and two prior scope rulings "did not describe garlic being immersed in boiling water such that the garlic was prepared by heat processing." *Id.*; *see also* Memorandum, "Scope Ruling in the Antidumping Duty Order on Fresh Garlic from the People's Republic of China" (Dep't of Commerce June 25, 2004) (barcode: 4386352-01 at Attachment 10) and Memorandum, "Scope Ruling – Trinity IQF Garlic Cloves, Antidumping Duty Order on Garlic from China" (Dep't of Commerce July 21, 2021) (barcode: 4145428-01). In light of this ambiguity, Commerce next analyzed the sources permitted under 19 C.F.R. § 351.225(k)(2) (the (k)(2) factors): the physical characteristics of the

product, the expectations of ultimate users, the ultimate use of the product, the channels of trade,

and the manner of advertisement and display of the product.  Final Scope Ruling at at 8-10.

After analyzing those factors, Commerce found that record evidence supported a conclusion that

Export Packers's IQF cooked garlic cloves fall within the Order's scope.  *Id.*

**II.    The Court Held That Commerce's Scope Ruling Was Unsupported by Substantial Evidence and Remanded It For Further Consideration**

After Commerce issued its final scope ruling, Export Packers appealed Commerce's

decision, arguing that: (1) Commerce's analysis of the (k)(1) factors was unsupported by

substantial evidence and not in accordance with law, and (2) Commerce improperly disregarded

evidence on the record in its analysis of the (k)(2) factors.  *See generally* ECF No. 7

(Complaint); *see also* Remand Results.  Following briefing for judgment on the agency record

and oral argument by the parties, on April 18, 2025, the Court issued an order remanding the

action to Commerce for further consideration.  *Export Packers*, 780 F. Supp. 3d 1342.

The Court remanded Commerce's Final Scope Ruling for a determination consistent with

its opinion.  *See id.* at 1351.  Specifically, the Court held that, applying the plain language of the

Order's scope*,* Export Packers's IQF cooked garlic cloves are "clearly prepared by heat

processing and physically transformed by that process."  *Id.*  In reaching this conclusion, the

Court held that the relevant scope language, *i.e.*, "prepared" by "heat processing," is not

ambiguous "when viewed in the context of the process at issue."  *Id.* at 1347.

The Court further held that Commerce's reliance on the Trinity and Amexim Scope

Rulings in its analysis of the inquiry merchandise's physical characteristics under 19 C.F.R. §

351.225(k)(1) was "plainly unreasonable."  *Id.* at 1350.  The Court described Commerce's

reliance on the two prior scope rulings as "misplaced" because the two prior scope rulings

examined "blanched" garlic, in contrast to Export Packers' IQF cooked garlic cloves, which the

Court characterized as "cooked." *Id.* at 1349-50. Holding that "Export Packers' garlic is cooked, and it is labeled as such," the Court concluded that Commerce had improperly relied on the two prior scope rulings and "fail{ed} to establish cooking is not heat processing." *Id.* at 1349-50.

Finally, the Court held that Commerce's remaining analysis of the (k)(2) factors was not supported by substantial evidence, including Commerce's reference to roasted garlic as an example of garlic "prepared" by "heat processing." *Id.* at 1350-51. "If the scope language was intended to exclude roasted garlic only," the Court held, "it would have said so." *Id.* at 1350. The Court further held that irrespective of the merits of Commerce's analysis of (k)(2) factors, this analysis was altogether unnecessary because Commerce's Final Scope Ruling was "clearly in conflict with the applicable scope language." *Id.* at 1351.

**III.    Commerce's Remand Redetermination Finding Export Packers's Garlic is Covered by the Scope of the Order is Consistent with the Court's Remand Opinion and Supported by Substantial Evidence**

On December 9, 2025, consistent with the Court's Remand Order, Commerce issued its remand redetermination to find that Export Packers's IQF cooked garlic cloves are excluded from the Order's scope on the basis that they are "prepared" by "heat processing." *See Export Packers*, 780 F. Supp. 3d at 1351; *see generally* Remand Results. Specifically, Commerce reversed its determination on the basis that the Court held that Commerce's initial scope ruling was "clearly in conflict with the applicable scope language{, requiring} no further analysis under the applicable regulation {}." *See* Remand Redetermination at 5 (citing *Export Packers*, 780 F. Supp. 3d at 1351). Notwithstanding defendant-intervenors' assertions that both primary and secondary interpretive sources within the meaning of 19 C.F.R. § 351.225(k)(1) and (2), respectively, demonstrate that Export Packers's IQF cooked garlic cloves are covered by the

scope, Commerce found, consistent with the Court's Remand Order, that the merchandise under consideration is excluded from the Order's scope. *Id.* at 4-10. In particular, in accordance with the Court's holdings that Commerce "should {not} have substituted its prior rulings regarding blanched garlic from the words of the order," nor "resort{ed} to the panoply of (k)(2) factors," on remand Commerce found that petitioners' reliance on the Trinity Scope Ruling and Preliminary Determination of the underlying less-than-fair-value investigation was unavailing. *Export Packers*, 780 F. Supp. 3d at 1351; *see* Remand Redetermination at 7-10.

In the Remand Order, the Court held that Commerce's finding that Export Packers's IQF cooked garlic cloves are within the Order's scope was not supported by substantial evidence and was "clearly in conflict with the applicable scope language." *Export Packers*, 780 F. Supp. 3d at 1351. Specifically, the Court held that Commerce's reliance on the Trinity and Amexim scope rulings, "which involved blanched, not cooked garlic," to find that Export Packers' IQF cooked garlic cloves are within the scope of the *Order* was "not supported by substantial evidence." *Id.* at 1347-50. On the contrary, as part of its analysis finding that the scope was unambiguous and, thus, that Commerce's (k)(2) analysis was unwarranted, the Court held that expert reports submitted on the record by Export Packers indicated that Export Packers's IQF cooked garlic cloves are "clearly prepared by heat processing and physically transformed by that process." *Id.* In keeping with its obligation to make a determination that is consistent with the Court's opinion and directive, in its final determination on remand Commerce followed the Court's logic to its natural conclusion—where the Court held that Export Packers's IQF cooked garlic cloves are "heat processed" per the plain language of the scope, Commerce found that the inquiry merchandise is excluded from the Order's scope consistent with this holding. *See* Remand Redetermination at 4-6 (citing *Export Packers*, 780 F. Supp. 3d at 1347).

6

## ARGUMENT

### I. Standard of Review

This Court's review of remand determinations is the same as its review of original determinations. *See* 19 U.S.C. § 1516a(b)(1)(B)(i)); *see also Bethlehem Steel Corp. v. United States*, 223 F.Supp.2d 1372, 1375 (Ct. Int'l Trade 2002). Therefore, in remand proceedings, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Crawfish Processors Alliance v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (stating "{s}ubstantial evidence is more than a mere scintilla").

### II. Commerce's Final Determination on Remand Complies With the Remand Order

On remand, Commerce concluded that Export Packers's garlic was outside the scope of the Order. *See generally* Remand Results. This redetermination complies with the Court's remand order. In its opinion, the Court held that (1) the plain language of the scope, namely "prepared" by "heat processing," is not ambiguous "when viewed in the context of the process at issue," and (2) with respect to Export Packers's IQF cooked garlic cloves specifically, "{t}he garlic at issue is clearly prepared by heat processing and physically transformed by that process." *Export Packers*, 780 F. Supp. 3d at 1351. Commerce concluded on remand that Export Packers's garlic does not fall within the Order's scope. This remand redetermination complies with the Remand Order and is supported by substantial evidence and otherwise in accordance with law.

In its comments on Commerce's final redetermination on remand, defendant-intervenors ask the Court to hold that Commerce's Remand Results are unlawful and again remand Commerce's redetermination based on their assertion that both primary and secondary interpretive sources on the record in fact demonstrate that Export Packers's IQF cooked garlic cloves are covered by the Order's scope. *See* Defendant-Intervenors' Comments at 2-10. Again, however, Commerce's final redetermination on remand complies with the Remand Order, is supported by substantial evidence and is otherwise in accordance with law, and defendant-intervenors' arguments in opposition fail.

**III.    Commerce's Finding That Export Packers's IQF Cooked Garlic Cloves Are Excluded from the Order's Scope Under the Scope's Plain Language Is Consistent with the Remand Order, Supported by Substantial Evidence, and Otherwise in Accordance with Law**

According to defendant-intervenors, "the scope's plain language and interpretive sources demonstrate Export Packers' imports of IQF 'cooked' garlic cloves are subject merchandise." Defendant-Intervenors' Comments at 2. The gravamen of defendant-intervenors' argument, however, is merely a disagreement with the Court's Remand Order. Indeed, defendant-intervenors stop short of ever asserting that Commerce's Remand Redetermination fails to comply with the Court's Remand Order. Because they could not make such an assertion.

In their comments on Commerce's final redetermination on remand, defendant-intervenors argue that the remand redetermination should again be remanded to Commerce on the basis that the agency failed to engage with primary and secondary sources that, in defendant-intervenors' view, illustrate that Export Packers' IQF cooked garlic cloves are within scope. *See* Defendant-Intervenors' Comments at 3-10. According to defendant-intervenors, "the scope's plain language explicitly describes the inquiry merchandise," as "frozen, {or} provisionally preserved." Defendant-Intervenor's Comments at 3 (quoting the Final Scope Ruling at 2, and 59

Fed. Reg. 59,209-59,210 (Nov. 16, 1994)).  This interpretation, however, is directly at odds with

the Court's Remand Order.

Here, the Court directed Commerce to make a redetermination that is consistent with the

Court's holding that Commerce's finding that that Export Packers's IQF cooked garlic cloves are

within the scope of the Order was not supported by substantial evidence and was "clearly in

conflict with the applicable scope language." *Export Packers*, 780 F. Supp. 3d at 1351.

Commerce could not, on remand, continue to make the same finding that the Court held is

"clearly in conflict with the applicable scope language." *Id.* And defendant-intervenors'

continued reliance on primary and secondary interpretive sources as support for their position

that the products at issue are within the Order's scope contradicts the Court's Remand Order and

law of the case.

Defendant-intervenors first challenge Commerce's remand redetermination on the basis

that the plain language of the scope "explicitly describes the inquiry merchandise."  Defendant-

Intervenors' Comments at 3.  This assertion, while accurate in part, has no bearing on the issue

central to this case.  *See Export Packers*, 780 F. Supp. 3d at 1345 ("At issue is whether garlic

that is immersed in boiling or near-boiling water for 90 seconds should be exempt from an

antidumping order that excludes garlic 'prepared' by 'heat processing.'").  That a product under

consideration may, absent exclusionary language, be covered by the plain language of a scope

does not mean that the product is not excluded from the scope through an express scope

exclusion.  *Cf. Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1371 (Fed. Cir. 1998)

(finding that a minor alterations anticircumvention inquiry does not apply to products expressly

excluded from the scope of an order, as such a finding would render a product both within scope

and excluded from the scope, producing "an absurd result.").  That is the very purpose of an

9

express exclusion.  The Court remanded Commerce's Final Scope Ruling to reconsider whether Export Packers's IQF cooked garlic cloves are excluded from the scope by virtue of satisfying the *exclusion* for "heat processed" garlic.  *Export Packers*, 780 F. Supp. 3d at 1350.[2]

Where the plain language of a scope is unambiguous (a legal determination by Commerce, or in this case, the Court), "'the plain meaning of the language governs.'"  *Id.* at 1346 (quoting *OMG, Inc. v. United States*, 972 F.3d 1358, 1363 (Fed. Cir. 2020)).  Commerce may only look to primary interpretive sources for guidance (and as needed thereafter, secondary interpretive sources) if the scope language is, in the first instance, ambiguous.  *See* 19 C.F.R. § 351.225(k)(1)-(2) and *Export Packers*, 780 F. Supp. 3d at 1346  at 7.  Necessarily, then, where the plain language of the scope is dispositive, Commerce's scope inquiry ends.  *See* *Arcelormittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 87 (Fed. Cir. 2012); *see also* *OMG, Inc.*, 972 F.3d at 1363.  In its Remand Order, the Court was clear: "{T}he court disagrees with the parties to the extent they assert the{} words {in the scope} are ambiguous when viewed in the context of the process at issue."  *Id.* at 1347.  "{I}n embarking on a (k)(1) analysis, {Commerce should not} have substituted its prior rulings regarding blanched garlic for the words of the order."  *Id.* at 1351.  On remand, then, Commerce appropriately determined that Export Packers's IQF cooked garlic cloves are excluded from the scope of the Order based on the plain language "prepared" by "heat processing," consistent with the Court's Remand Order.

---

[2] The Court articulated this distinction in the Remand Order: "Commerce determined that Export Packers' cooked garlic is still garlic that is used as food or seasonings, and is still frozen, which is covered by the plain language of the scope.  This determination, however, ignores the 'heat processing' exclusion language which explicitly renders garlic 'prepared or preserved' by 'heat processing' out of scope."  *Export Packers*, 780 F. Supp. 3d at 1350.

a.  **Commerce Appropriately Analyzed (k)(1) Primary Interpretive Sources in its
     Remand Redetermination**

The Court was explicit in its review of Commerce's 19 C.F.R. § 351.225(k)(1) analysis.

The Court held that "{Commerce} should {not} have substituted its prior rulings regarding

blanched garlic for the words of the order.  The garlic at issue is clearly prepared by heat

processing and physically transformed by that process." *Export Packers*, 780 F. Supp. 3d at

1351 (referring to Commerce's earlier Trinity and Amexim scope rulings).  On that point, the

Court further explained: "using either the limited process at issue in Trinity or the unexplained

process at issue in Amexim as the new touchstone is improper.  The touchstone remains the

words of the order." *Id.* at 1349.  Defendant-intervenors' reliance on the (k)(1) primary

interpretive sources for its analysis is inconsistent with the Court's Remand Order, and

Commerce's obligations under the regulations.  Bound by the Court's finding that "{t}he garlic

at issue is clearly prepared by heat processing and physically transformed by that process,"

Commerce reasonably determined that defendant-intervenors' arguments concerning the Trinity

scope ruling and Preliminary Determination of the underlying less-than-fair-value investigation

do not supersede the Court's finding concerning the plain language of the scope.  *See* Remand

Redetermination at 7-9 (citing Trinity Scope Ruling and *Fresh Garlic From the People's*

*Republic of China*, 59 Fed. Reg. 35,310 (Dep't of Commerce July 11, 1994).

Defendant-intervenors' arguments with respect to the Trinity scope ruling are

unpersuasive for the simple reason that each argument has already been addressed and rejected

by the Court.  *See* Defendant-Intervenors' Comments at 4-6.  Defendant-intervenors first allege

that the inquiry merchandise is identical to the merchandise under consideration in the Trinity

scope ruling.  *Id.* at 4.  Even assuming this argument has some support in the record, Commerce

is foreclosed from making the same finding as it is inconsistent with the Court's finding that "the

blanching processes involved in Trinity and Amexim are different from Export Packers' cooking process" and that "{Commerce} should {not} have substituted its prior rulings regarding blanched garlic for the words of the order." *Export Packers*, 780 F. Supp. 3d at 1349, 1351.

Second, according to defendant-intervenors, Commerce incorrectly mischaracterized the Remand Order as holding Commerce's reliance on the Trinity scope ruling to be unsupported by substantial evidence. *See* Defendant-Intervenors' Comments at 5 (citing Remand Redetermination at 8). That is, defendant-intervenors contend that the Court in fact found Commerce's reliance to be merely "misplaced." *Id.* But this position ignores the Court's entire analysis of the Trinity scope ruling. Although the Court held Commerce's reliance on the Trinity scope ruling was "misplaced," the ensuing analysis demonstrates that reliance on the Trinity scope ruling in any capacity was in error. Specifically, the Court went on to say: "Commerce's prior scope rulings in Trinity and Amexim, *at most*, support the conclusion that roasting garlic could be one example of heat processing—importantly, it need not be the only example." *Export Packers*, 780 F. Supp. 3d at 1350 (emphasis added). Accordingly, the Court's Remand Order foreclosed reconsideration of the plain language of the scope based on the Trinity scope ruling. *See* Remand Redetermination at 7-8; *Export Packers*, 780 F. Supp. 3d at 1351 ("{Commerce} should {not} have substituted its prior rulings regarding blanched garlic for the words of the order.")

Defendant-intervenors raise Commerce's Preliminary Determination in the antidumping duty investigation as an additional primary interpretive source to support its position. *See* Defendant-Intervenors' Comments at 6-8. According to defendant-intervenors, Commerce's Preliminary Determination illustrates that the scope is intended to differentiate between garlic that is "provisionally preserved" and "prepared or preserved by heat processing or other

ingredients." Defendant-Intervenors' Comments at 6-7. Export Packers's scope ruling

application, defendant-intervenors argue, confirms that Export Packers's IQF cooked garlic

cloves are provisionally preserved, and therefore fall short of being prepared by heat processing.

Defendant-Intervenors' Comments at 7. This argument fails [3]

To the extent that there exists a distinction between provisionally preserved and prepared

by heat processing, the Court dismissed any analysis of ultimate use as fruitless in the context of

this scope analysis. *Id.*; *see also* Defendant-Intervenors' Comments at 7 ("In the Amexim scope

ruling… Commerce explained that the phrase 'provisionally preserved' involves merchandise

that remains unsuitable for immediate consumption and mainly used as raw materials for

manufacturing purposes. This explicitly describes the state of Export Packers' IQF 'cooked'

garlic cloves upon importation, as they are not fit for immediate consumption and are a raw

material used in fresh and frozen food preparations like soups, broths, etc." (internal citations

omitted)). And, even if such a distinction had merit, a finding that Export Packers' IQF cooked

garlic cloves are "merely 'provisionally preserved,'" Defendant-Intervenors' Comments at 8,

cannot supersede the Court's reasoning in the Remand Order:

> The court struggles to follow Commerce's reasoning that although Export Packers'
> cooked garlic has certain different characteristics *due to a heating element*, it is
> nevertheless not "heat processed." Export Packers' garlic is cooked, and it is labeled as
> such. The government fails to establish cooked is not heat processing.

---

[3] Although Commerce did not expressly analyze this source in its underlying scope
ruling, and accordingly, this analysis was not before the Court, Commerce reasonably interpreted
the Court's Remand Order to nonetheless dismiss its viability as a primary interpretive source.
*See* Remand Redetermination at 8-9; *see also See Coalition of Am. Flange Producers v. United
States*, 448 F. Supp. 3d 1340, 1351 (Ct. Int'l Trade 2020) ("{T}he agency is not required to
address every piece of evidence submitted by the parties, and Commerce is presumed to have
considered all the evidence in the record absent a showing to the contrary.") (cleaned up).

*Export Packers*, 780 F. Supp. 3d 1349-50 (emphasis in original).  Consistent with the Court's

review of the Final Scope Ruling, Commerce appropriately found that the record lacks primary

interpretive sources that are otherwise dispositive.  *See* Remand Redetermination at 6.

> **b.  Commerce Appropriately Declined to Consider Secondary Interpretive Sources in the Remand Redetermination**

To the extent that primary interpretive sources are at all instructive in this scope ruling

(Commerce maintains they are not), any so-called interpretive value of secondary interpretive

sources is even less so.  *See* Defendant-Intervenors' Comments at 8-10.  As Commerce explained

in the remand redetermination, the Remand Order held that Commerce had improperly

"substituted its prior rulings regarding blanched garlic for the words of the order."  Remand

Redetermination at 9 (citing *Export Packers*, 780 F. Supp. 3d at 1351 (internal quotations

omitted)).  Where primary and secondary interpretive sources conflict, Commerce is directed to

treat the primary interpretive sources as "normally" governing.  *Id.* at 9-10; 19 C.F.R. §

351.225(k)(1)(ii).  The Court directed Commerce to conform its scope determination to the

Court's holding that the plain language of the scope is unambiguous and the end of the analysis.

*See Export Packers*, 780 F. Supp. 3d at 1351.  It does not follow that Commerce was obligated

to, and accordingly failed to, consider defendant-intervenors' cited secondary interpretive

sources.  Remand Redetermination at 9-10; *see also* Defendant-Intervenors' Comments at 9.

Even assuming that Commerce was required to consider secondary interpretive sources

on remand—or could do so and not violate the Remand Order—other aspects of the Remand

Order foreclosed this option.  *See* Remand Redetermination at 9.  Defendant-intervenors allege

that language in the Harmonized Tariff Schedule of the United States (HTSUS) and related U.S.

Customs and Border Protection rulings, and Commerce's prior analyses thereof, reveal a

distinction between garlic that is "provisionally preserved" and garlic that is "prepared or

14

preserved." *See* Defendant-Intervenors' Comments at 8-10.  Specifically, defendant-intervenors

cite Federal Circuit precedent holding that "prepared" food must be "destined for a specific use"

or otherwise "undergo additional processing beyond what is already inherently encompassed

within the term 'food.'"  *Id.* at 9 (citing *Orlando Food Corp. v. United States*, 140 F.3d 1437

(Fed. Cir. 1998) and *Nature's Touch Frozen Foods (West) Inc. v. United States*, No. 2023-2093,

2025 WL 1354992, at *1-3 (Fed. Cir. May 9, 2025)).  This Court held that the ultimate use of a

garlic product in the context of this scope ruling is not a useful concept, however, where "any

garlic, processed or not, is a food ingredient or seasoning."  *Export Packers*, 780 F. Supp. 3d at

1350.  Both *Orlando Food* and *Nature's Touch* concern the ultimate use of certain food products

as informative to determining their appropriate HTSUS codes.  *See Orlando Food*, 140 F.3d at

1441-42 and *Nature's Touch*, 2025 WL 1354992 at *4.  Defendant-intervenors' reliance on

*Orlando Food* and *Nature's Touch* is thus futile because both cases interpret HTSUS language

that involves ultimate use, which the Court dismissed as too broad of a concept in this scope

analysis of Export Packers's IQF cooked garlic cloves.  *See Export Packers*, 780 F. Supp. 3d at

1350; *see also* Remand Redetermination at 9-10.

     Moreover, to the extent that *Orlando Food* or *Nature's Touch* articulate principles

adaptable to the scope at hand, both cases considered different food products.  *See Orlando

Food*, 140 F.3d at 1439 (analyzing whether canned tomato product was appropriately classified

under HTSUS heading titled "tomatoes prepared or preserved") and *Nature's Touch*, 2025 WL

1354992 at *1-2 (analyzing whether frozen fruit mixtures should have been classified under

HTSUS heading titled "Food preparations not otherwise specified or included," as opposed to

HTSUS subheading "Fruit…frozen…other").  The analyses on which defendant-intervenors rely

in both cases also considered different processes: *Orlando Food* analyzed whether canned

tomatoes "consisting of approximately sixty percent whole, peeled tomatoes and forty percent tomato puree by weight, as well as salt, citric acid, and basil leaf" constituted "preparations" within the context of HTSUS heading "Sauces and preparations therefor," and *Nature's Touch* considered whether frozen fruit mixtures, by way of being frozen, constituted "food preparations." *See Orlando Food*, 140 F.3d at 1441-42 and *Nature's Touch*, 2025 WL 1354992 at *5. Neither case could possibly supersede the scope's plain language. *See Export Packers*, 780 F. Supp. 3d at 1349 ("The touchstone remains the words of the order."). Commerce's analysis of the primary and secondary interpretive sources is supported by substantial evidence, in accordance with the Remand Order, and should be sustained.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment in favor of the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

/s/ Reginald T. Blades, Jr., by Patricia M.
McCarthy
REGINALD T. BLADES JR.
Assistant Director

OF COUNSEL:                                  /s/ Isabelle Aubrun
FEE PAUWELS                                  ISABELLE AUBRUN
Attorney                                     Trial Attorney
Office of the Chief Counsel                  U.S. Department of Justice
    for Trade Enforcement and Compliance   Civil Division
U.S. Department of Commerce                  Commercial Litigation Branch
                                         P.O. Box 480
                                         Ben Franklin Station
                                         Washington, D.C. 20044
                                         Telephone: (202) 598-3846
                                         E-mail: isabelle.aubrun2@usdoj.gov

Dated: January 16, 2026                      *Attorneys for Defendant United States*